FILED

April 28, 2016

In the Office of the Clerk of Court

WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| MARK AND JENNIFER HANNA, husband and wife, | ) ) ) | No. 33159-8-III |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| ALLAN AND GINA MARGITAN, husband and wife, and INLAND POWER AND LIGHT CO., HAROLD L. AND PATRICIA CROWSTON, husband and wife, DAN R. BOND, D.M. and A. BOND, RYKEN LIVING TRUST, STEVE and SHANNON MOSER, husband and wife, DREW BOND and AVISTA CORPORATION. | ) ) ) ) ) ) ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — Mark and Jennifer Hanna (the Hannas) appeal the trial court's summary judgment order and award of attorney fees and costs to respondents. The trial court ruled that respondents' easements over the Hannas' lot were valid, and awarded respondents their reasonable attorney fees and costs for defending what it found to be a frivolous action. The Hannas contend: (1) easements that preexist a short plat, but

which are not depicted thereon, are extinguished by operation of law; (2) because such easements are extinguished, they cannot be revived because the Land Use Petition Act (LUPA), chapter 36.70C RCW, decisions are final if not timely appealed; (3) after a short plat is recorded, one cannot add a private easement without formally amending the short plat; (4) the two 2002 private road easements in favor of Allan and Gina Margitan (the Margitans) are ineffective because they lack a present intent to convey; (5) the Margitans violated the short plat by building their house outside the building area depicted on the short plat; and (6) the trial court abused its discretion in awarding the respondents attorney fees and costs under RCW 4.84.185. With the exception of portions of their sixth argument, we disagree with the Hannas' contentions. We conclude that the Hannas' claims against the Margitans and Inland Power & Light were not frivolous, and the trial court abused its discretion in awarding those parties attorney fees and costs under RCW 4.84.185. In all other respects, we affirm. We deny the respondents' requests for attorney fees on appeal.

## FACTS

Prior to the short subdivision that created Short Plat 1227-00, multiple easements were recorded that affected the property later owned by the Hannas. For instance, Avista Corporation's predecessor recorded multiple water storage and water overflow easements

2

affecting the property. In addition, a "switchback" road crosses the property, and Harold

and Patricia Crowston, Dan R. and Mary Ann Bond, Dan M. Bond and Annette Bond,

Steve and Shannon Moser, and the Ryken Living Trust (collectively "the switchback road

users") have recorded easements that permit them to use the switchback road for access to

their properties.

In May 2000, Spokane County (the County) granted Marion Bond's short

subdivision application, thereby approving the division of his property into Parcel 1,

Parcel 2, and Parcel 3. Access to the subdivision is from the south. The southernmost lot

is Parcel 1, Parcel 2 is in the middle, and Parcel 3 is northernmost. A lake used for

recreation is located beyond the subdivision, to the northeast.

The first page of the County's findings of fact, conclusions, and decision makes

reference to the switchback road:

> There is an existing easement located on the site that serves the residence at
> [Parcel 3]. . . . It is noted that the legal description for this easement does
> not match the field location of the existing road per surveyor comments on
> the proposed preliminary plat map. The applicant is proposing an
> *additional access easement* to serve [Parcel 1 and Parcel 2].

Clerk's Papers (CP) at 364 (emphasis added). The decision indicates that "[t]he final

short plat shall be designed substantially in conformance with the preliminary short plat

of record." CP at 366. Additionally, the preliminary short plat shows a proposed 40-foot

easement along the westernmost portion of Parcel 1 and Parcel 2. Because the easement extends along the entire western side of Parcel 2, we construe it as also benefiting Parcel 3.

The approved short plat was recorded on March 11, 2002. The short plat depicted the 40-foot easement, but the existing switchback road easement was absent. Avista's water storage and water overflow easements were not included in either the preliminary short plat or the short plat. According to the County's director of planning, the County's findings of fact, conclusions, and decision regarding Short Plat 1227-00 did not address or impact the preexisting easements, and the short plat is essentially a pictorial depiction of the County's approval (i.e., the required depictions and notes for approval of the subdivision).

The Margitans purchased Parcel 1 from Ms. Bond on April 6, 2002. Ms. Bond granted the Margitans two private road easements across Parcel 2 and Parcel 3 "along that portion of the presently existing [switchback road] which travels in a northwesterly direction then turns back and travels in a southeasterly direction."[1] CP at 710. The two private road easements were recorded April 17, 2002. The Hannas purchased Parcel 2 from Ms. Bond on May 2, 2002. The Hannas' title report indicated that Parcel 2 was

---

[1] We surmise the Margitans requested access through Parcel 2 and Parcel 3 so they

4

encumbered by multiple easements, including Avista's water storage and water overflow easements, the easement or easements benefiting the switchback road users, and the Margitans' two private road easements.

In late June 2002, the Hannas granted Inland Power & Light a right-of-way easement to construct an electrical system, and keep the system clear of obstructions along a 10-foot wide path. The legal description of the easement broadly states, "Lot [sic] 2 of Short Plat 1227-00." CP at 384. The easement was recorded on March 25, 2003.

On February 1, 2010, the Margitans acquired Parcel 3 of Short Plat 1227-00. At the time of the approval of Short Plat 1227-00, Parcel 3 had an existing structure. The County's findings of fact, conclusions, and decision approving Short Plat 1227-00 states: "The site is currently undeveloped with the exception of the existing residence, boathouse and dock." CP at 364. The County director of planning later indicated that the existing structure was "grandfathered" into Short Plat 1227-00. CP at 490. On October 3, 2011, the Margitans were granted a permit to demolish and rebuild a portion of the grandfathered structure on Parcel 3. The permit did not constrain the new structure to the footprint of the grandfathered structure.

---

had access to the lake for recreation.

5

On October 12, 2012, the Hannas filed a quiet title complaint against the

Margitans. The Hannas sought a declaration that the Margitans' two private road

easements along the switchback road were invalid, either because they did not show a

present intent to convey property, or because they were ineffective attempts to alter the

short plat without formal amendment, as required by RCW 58.17.215.

On February 21, 2013, the Hannas moved for partial summary judgment, seeking

an order that (1) the only easement was the 40-foot easement across the westernmost

portions of Parcel 1 and Parcel 2, depicted on the face of the short plat, and (2) the short

plat was a land use decision, unreviewable under LUPA's statute of limitations. On

May 24, 2013, the trial court entered an order that stated:

> 1. Plaintiffs' Motion for Partial Summary Judgment is GRANTED in
> part. There is no question of material fact that Short Plat 1227-00 in
> Spokane County depicts only a single 40 foot wide easement on its
> face. As a matter of law, the Land Use Petition Act ("LUPA")
> applies to Short Plat 1227-00 inasmuch as the approval of Short Plat
> 1227-00 in March of 2002 was a land use decision and no appeal,
> under LUPA, was made of the land use decision approving the Short
> Plat 1227-00 and hence the Short Plat became a valid short plat. No
> amendments or modifications have occurred to Short Plat 1227-00
> since it was created in 2002. Plaintiffs' motion is DENIED in part as
> to whether the Short Plat extinguishes pre-existing easements.

CP at 260-61.

6

Inland Power & Light intervened on August 26, 2013. After Inland Power & Light's motion to add indispensable parties, the Hannas filed an amended complaint that included Avista and the switchback road users. The Hannas' amended complaint also alleged that the Margitans violated the building restrictions of Parcel 3 contained in the short plat. On October 13, 2014, Inland Power & Light moved for summary judgment on the basis that LUPA does not affect preexisting or subsequently granted easements. The Hannas moved for summary judgment on October 21, 2014, arguing that the creation of the final short plat map was a LUPA land use decision that extinguished the preexisting easements, no easement could be added over Parcel 2 without amending the final short plat map, all the defendants and the intervenor failed to appeal the LUPA land use decision within 21 days, and the Margitans constructed permanent structures outside the building area of Parcel 3. In December 2014, Avista, the Margitans, and the switchback road users moved for summary judgment on similar grounds as Inland Power & Light. The Margitans also argued that the Hannas could not challenge the remodel permit for Parcel 3 because the LUPA statute of limitations had passed.

The trial court granted summary judgment dismissal of the Hannas' claims against all of the respondents. After the trial court entered summary judgment, the respondents moved for attorney fees and costs pursuant to RCW 4.84.185, asserting that the dismissed

claims were frivolous. The trial court granted the motions. The individual orders in favor of Inland Power & Light, the switchback road users, and the Margitans state that the trial court found that the claims asserted by the Hannas "were frivolous and advanced without reasonable cause." CP at 1085, 1092, 1117, 1136. The order in favor of Avista stated that the "alleged claims had no basis in law or fact as required by statute and established Washington case law." CP at 1109. Only the order regarding Inland Power & Light made specific findings, which stated "the plaintiffs failed to present any evidence to substantiate that a land use decision occurred that affected Inland Power and Light Co. or any of the other defendants; [and] Inland Power and Light Co. received a private easement grant that cannot be terminated by a land use decision." CP at 1085.

The Hannas timely appealed.

## ANALYSIS

A.  *Review of summary judgment orders: De novo*

This court reviews an order granting summary judgment de novo. *McDevitt v. Harborview Med. Ctr.*, 179 Wn.2d 59, 64, 316 P.3d 469 (2013). Under de novo review, this court engages in the same inquiry as the trial court, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. *M.K.K.I., Inc. v. Krueger*, 135 Wn. App. 647, 653, 145 P.3d 411 (2006). Summary judgment is proper

if no genuine issue of material fact remains, and the moving party is entitled to judgment as a matter of law. CR 56(c). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). Judgment as a matter of law is warranted "if reasonable people could reach one conclusion based on the evidence when viewing the facts in the light most favorable to the nonmoving party." *O.S.T. v. Regence BlueShield*, 181 Wn.2d 691, 703, 335 P.3d 416 (2014).

B.    *Short plats and easements*

The Hannas first argue that the only valid easement burdening their property is the 40-foot road and utilities easement depicted on the face of the short plat. The Hannas claim that (1) the easements recorded prior to the short plat being recorded (belonging to Avista and the switchback road users) were extinguished by operation of law as they were omitted from the short plat, and (2) the easements purportedly created after the short plat was recorded (belonging to the Margitans and Inland Power & Light) are invalid because informal attempts to alter a short plat are ineffective.

1.    An omission of an existing easement in a short plat does not, by itself, extinguish an easement

"An easement is a property right separate from ownership that allows the use of another's land without compensation." *M.K.K.I.*, 135 Wn. App. at 654. "An easement

9

appurtenant is an *irrevocable* interest in land which has been obtained for duly given consideration." *Kirk v. Tomulty*, 66 Wn. App. 231, 238-39, 831 P.2d 792 (1992) (emphasis added). "Easements appurtenant become part of the realty which they benefit. Unless limited by the terms of creation or transfer, appurtenant easements follow possession of the dominant estate through successive transfers." *Green v. Lupo*, 32 Wn. App. 318, 323, 647 P.2d 51 (1982). "[A] successor in interest to the servient estate takes the estate subject to the easements if the successor had actual, constructive, or implied notice of the easement." *810 Props. v. Jump*, 141 Wn. App. 688, 699, 170 P.3d 1209 (2007). "Recording the easement with the county auditor gives constructive notice to any successors in title." *Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 846, 999 P.2d 54 (2000).

"Termination of easements is disfavored under the law." *City of Edmonds v. Williams*, 54 Wn. App. 632, 636, 774 P.2d 1241 (1989). When an easement is expressly granted, "[t]he extent and duration of the easement is to be determined from the terms of the grant." *Zobrist v. Culp*, 95 Wn.2d 556, 561, 627 P.2d 1308 (1981). Easements are only extinguishable in specific situations, such as when the easement holder releases it in an instrument that complies with the statute of frauds, the owner of the servient estate uses the easement adversely, the easement is abandoned, or the dominant and servient estate merge. *See Cowan v. Gladder*, 120 Wash. 144, 206 P. 923 (1922) (instrument); *see*

*also Williams*, 54 Wn. App. at 634 (adverse use by servient estate); *see also Heg v. Alldredge*, 157 Wn.2d 154, 161, 137 P.3d 9 (2006) (abandonment); *see also Radovich v. Samad Nuzhat*, 104 Wn. App. 800, 805, 16 P.3d 687 (2001) (merger).

The Hannas fail to cite any authority to support their position that the omission of an easement in a short plat, by itself, extinguishes the easement. We find no authority either. The preexisting easements that the Hannas argue were extinguished are express easements that have been properly recorded. Moreover, had the legislature intended that a short plat omission could extinguish an easement, it would have required all easement holders to receive actual notice of a subdivision application so they could protect their interests before an unintentional deprivation occurred. Instead, only nearby property owners are required actual notice before a subdivision of land. RCW 58.17.090(1)(b). We hold that easements omitted from a short plat are not, solely by their omission, extinguished. We, therefore, conclude that the trial court did not err when it confirmed the validity of the easements omitted from the short plat.

2. <u>Creation of easements after property is subdivided</u>

The Hannas also argue that once a short plat is recorded, a party cannot alter the subdivision by granting a private easement without formally amending the short plat. In support of their argument, they cite RCW 58.17.215 and *M.K.K.I.*

RCW 58.17.215 provides in relevant part:

**Alteration of subdivision—Procedure.** When any person is interested in the alteration of any subdivision or the altering of any portion thereof . . . that person shall submit an application to request the alteration to the legislative authority of the city, town, or county where the subdivision is located. . . .

. . . .

After [proper notice, any required hearing, and] approval of the alteration, the legislative body shall order the applicant to produce a revised drawing of the approved alteration of the final plat or short plat, which after signature of the legislative authority, shall be filed with the county auditor to become the lawful plat of the property.

In *M.K.K.I.*, a landowner attempted to extinguish easements that were created in a short plat, but the landowner failed to comply with the formal requirements for amending the short plat. *M.K.K.I.*, 135 Wn. App. at 650-53. We held that easements depicted in a short plat could not be extinguished without formally amending the short plat. *Id.* at 657-60. To permit one to informally change short plat depictions risks an illegal use that otherwise would be caught by an agency charged with reviewing the short plat. Even more obvious, to permit one to allow a use expressly prohibited by the notes contained on the short plat results in an illegal use. We therefore hold that changes to something depicted on a short plat, or changes that permit something expressly prohibited by the notes on the short plat, are ineffective unless the plat is formally amended as provided for in RCW 58.17.215.

12

Here, nothing in the short plat or the notes prohibited the owner of Parcel 2 or Parcel 3 from conveying an easement to Parcel 1 along the existing switchback road. Moreover, nothing in the short plat or the notes prohibited the owner of Parcel 2 from conveying a utility easement. Because there was no risk that any of these easements created an illegal use within the short plat, there is no need to require that the short plat is formally amended. We conclude that the trial court did not err when it confirmed the validity of these three easements.

C.      *Conveyance of the two 2002 easements from Ms. Bond to the Margitans*

The Hannas also argue that the two easements, recorded on April 17, 2002, from Ms. Bond to the Margitans are ineffective because they fail to convey a present interest in property. In support of their argument, they cite *Zunino v. Rajewski*, 140 Wn. App. 215, 165 P.3d 57 (2007). In *Zunino*, the purported easements were entitled "Private Road & Utility Easement[s]." *Id.* at 222. The documents stated, "'This agreement made and entered into [date], by the undersigned property owner, who *is* granting the easement across their property.'" *Id.* (emphasis added). The documents further state, "'Whereas this easement *was created* as a medium of ingress and egress for the benefit of . . . .'" *Id.* This court held that the above language failed to convey an easement "because the words do not demonstrate a present intent to grant . . . an easement." *Id.*

Here, the purported easements are entitled "Private Road Easement." CP at 710, 713. The documents state, "THIS AGREEMENT made and entered into [date], by the undersigned property owners, who *are* granting the easement across their property . . . ." CP at 710, 713 (emphasis added). The documents further state, "WHEREAS this easement *was* created as a medium of ingress and egress for the benefit of . . . ." CP at 710, 713 (emphasis added). The *Zunino* language and the language here is identical in all material respects.

The Margitans attempt to distinguish *Zunino* on the basis of background facts outside of the wording of the *Zunino* easements. Although the background facts in *Zunino* indicate that the "easement" grantor had no present intent to grant the easement, the *Zunino* court did not base its decision on these extrinsic facts. Rather, the *Zunino* court based its decision on the language used in the "easement" deeds.

We therefore must decide whether to follow this holding in *Zunino* or to overrule it. Although the grant language used in the easements before us is awkward and imprecise, we must be guided by the overarching rule for construing easements: "Courts interpret easement grants to give effect to the parties' original intent." *Snyder v. Haynes*, 152 Wn. App. 774, 779, 217 P.3d 787 (2009) (citing *Brown v. Voss*, 105 Wn.2d 366, 371, 715 P.2d 514 (1986)). "What the original parties intended is a question of fact and the

14

legal consequence of that intent is a question of law." *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

> The intent of the original parties to an easement is determined from the deed as a whole. If the plain language is unambiguous, extrinsic evidence will not be considered. If ambiguity exists, extrinsic evidence is allowed to show the intentions of the original parties, the circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' prior conduct or admissions.

*Id.* (internal citations omitted).

Here, as in *Zunino*, we have imprecise, awkward language as to the present intent to grant an easement: One sentence is phrased in the present tense, while another sentence is phrased in the past tense. We also have two facts coming from extrinsic evidence. First, Ms. Bond, the easement grantor, had sold Parcel 1 to the Margitans 10 days before executing the documents under consideration. Second, the newly purchased Margitan lot was near a recreational lake, but without the easements conveyed, the Margitans would not have easy legal access to the lake. The extrinsic evidence here establishes only one thing—that on April 17, 2002, Ms. Bond had a present intent to convey the two easements to the Margitans. We therefore hold that the two private road easements from Ms. Bond to the Margitans are effective. To the extent that *Zunino* held that the easement deeds unambiguously did not convey an easement, we overrule *Zunino*. The result reached by the *Zunino* court was undoubtedly correct, but the result should have been

15

reached based on evidence extrinsic to the easement deeds. We conclude that the trial court correctly granted the Margitans summary judgment on this issue.

D.     *The Hannas may not challenge the location of the Margitans' improvements*

Next, the Hannas argue that Short Plat 1227-00 does not contain a grandfather clause that allows the Margitans to build structures outside of the building area in Parcel 3.

The County's findings of fact, conclusions, and decision approving Short Plat 1227-00 states: "The site is currently undeveloped with the exception of the existing residence, boathouse and dock." CP at 364. The County director of planning later indicated that the existing structures were "grandfathered" into Short Plat 1227-00. CP at 490. Further, in 2011, the County granted the Margitans a permit to rebuild a residence on Parcel 3. Both the approval of Short Plat 1227-00, and the Margitans' rebuilding permit, constitute land use decisions under LUPA. *See* RCW 36.70C.020(2)(a). An unappealed LUPA land use decision, even if illegal, is final after 21 days and may not be challenged. *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 407, 120 P.3d 56 (2005). The trial court correctly granted the Margitans summary judgment on this issue.

E.  *The trial court's award of attorney fees and costs pursuant to RCW 4.84.185*

Finally, the Hannas challenge the trial court's award of attorney fees and costs to the respondents under RCW 4.84.185, which allows attorney fees for defending against a frivolous action. Specifically, the Hannas argue that their claims were not frivolous, and the trial court entered insufficient findings.

RCW 4.84.185 reads, in pertinent part,

> In any civil action, the court . . . may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense.

"A frivolous action is one that cannot be supported by any rational argument on the law or facts." *Rhinehart v. Seattle Times, Inc.*, 59 Wn. App. 332, 340, 798 P.2d 1155 (1990).

In *Eller v. East Sprague Motors & R.V.'s, Inc.*, 159 Wn. App. 180, 194, 244 P.3d 447 (2010), we noted that an action involving multiple parties may, consistent with RCW 4.84.185, be frivolous as to one party, but not frivolous to another:

> within the context of the statute and given the purpose of RCW 4.84.185, the only reasonable reading of the statute is that a defendant drawn into an action without reasonable cause and subjected to claims against it that, considered as a whole, are frivolous, may be awarded expenses under

17

RCW 4.84.185, regardless of the merit of the plaintiff's claims against other defendants.

"The decision to make an award of attorney's fees under RCW 4.84.185 is left to the discretion of the trial court and will not be disturbed in the absence of a clear showing of abuse." *Rhinehart*, 59 Wn. App. at 339-40. Under such standard, this court considers "whether the court's conclusion was the product of an exercise of discretion that was manifestly unreasonable or based on untenable grounds or reasons." *Tiger Oil Corp. v. Dep't of Licensing*, 88 Wn. App. 925, 938, 946 P.2d 1235 (1997). "If the trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis, it necessarily abuses its discretion." *Dix v. ICT Grp., Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

RCW 4.84.185 specifically provides that a court may award expenses of suit "upon written findings by the judge that the action . . . was frivolous." "When the Washington legislature intends to require that an explicit finding must be made for a court to act, it says so." *In the Matter of Rapid Settlements, Ltd.*, 189 Wn. App. 584, 605, 359 P.3d 823 (2015). In *North Coast Electric Company v. Selig*, Division One stated,

> before awarding attorney fees under RCW 4.84.185, the court must make written findings that the lawsuit in its entirety is frivolous and advanced without reasonable cause. Again, the court summarily found that Selig's counterclaims were frivolous and advanced without reasonable cause. It did not specify why the counterclaims were baseless. Without some

18

explanation, we are unable to determine whether the trial court abused its discretion in granting attorney fees under this statute. Therefore, we remand with directions to reconsider the RCW 4.84.185 basis for the award and to enter appropriate findings if the award is confirmed on that basis.

136 Wn. App. 636, 650, 151 P.3d 211 (2007) (footnote omitted).

Here, in the order granting attorney fees and costs to Inland Power & Light, the trial court specifically found that "the plaintiffs failed to present any evidence to substantiate that a land use decision occurred that affected Inland Power and Light Co. *or any of the other defendants*." CP at 1085 (emphasis added). Although the remaining orders granting attorney fees and costs only contain the stock "frivolous and advanced without reasonable cause" language, the specific findings contained in Inland Power & Light's order are sufficient to allow this court to determine if the trial court abused its discretion.[2]

As we noted above, there was no authority for the Hannas' argument that the recording of a short plat extinguishes easements not depicted on the short plat. For this reason, we conclude that the trial court did not abuse its discretion when finding the

---

[2] Although there is some dispute regarding whether the Hannas preserved the sufficiency of the findings issue, the Hannas moved for reconsideration on the grounds that their claims were not frivolous. The sufficiency of the findings issue is intertwined in this issue because "[w]ithout some explanation, [this court is] unable to determine whether the trial court abused its discretion in granting attorney fees under [RCW 4.84.185]." *N. Coast Elec. Co.*, 136 Wn. App. at 650.

19

Hannas' actions against Avista and the switchback road users were frivolous in their entirety.

Also as noted above, the Hannas' argument that the 2002 Bond to Margitan private road easements were ineffective was based on *Zunino*, binding authority to the trial court. We therefore reverse the trial court's finding that the Hannas' action against the Margitans was frivolous in its entirety, and similarly vacate the award of fees and costs under RCW 4.84.185.

We next consider whether the award of attorney fees and costs under RCW 4.84.185 to Inland Power & Light was an abuse of discretion. The Hannas' RCW 58.17.215 argument has some statutory support. RCW 58.17.215 requires an alteration to a short plat to be made through a formal short plat amendment. Adding an easement that is not depicted on a short plat is arguably an "alteration." Because the Hannas' argument was supported by a rationale argument on the law and facts, we hold that the trial court abused its discretion when awarding attorney fees and costs to Inland Power & Light, and similarly vacate the award of fees and costs under RCW 4.84.185.

F.      *Attorney fees on appeal*

Most of the respondents have requested an award of attorney fees under RCW 4.84.185 and/or RAP 18.9(a). Attorney fees for a frivolous appeal are available

only under RAP 18.9(a). Because RCW 4.84.185 requires written findings to support an

award of attorney fees for a frivolous claim, and appellate courts do not make findings,

RCW 4.84.185 does not authorize an award of fees on appeal. *See Bill of Rights Legal*

*Found. v. Evergreen State Coll.*, 44 Wn. App. 690, 697, 723 P.2d 483 (1986)

(RCW 4.84.185 "is not a basis for recovery of fees on appeal.").

Only Avista and Inland Power & Light request an award of attorney fees for a

frivolous appeal under RAP 18.9(a).[3] RAP 18.9(a) provides this court may require the

payment of fees by a party who files a frivolous appeal. "[A]n appeal is frivolous if it

raised no debatable issues on which reasonable minds might differ and it is so totally

devoid of merit that no reasonable possibility of reversal exists." *Protect the Peninsula's*

*Future v. City of Port Angeles*, 175 Wn. App. 201, 220, 304 P.3d 914 (2013). "All doubts

as to whether the appeal is frivolous should be resolved in favor of the appellant."

*Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd.*, 170 Wn.2d

577, 580, 245 P.3d 764 (2010).

---

[3] Specifically, Avista requests attorney fees and costs pursuant to RAP 18.1, RAP 18.9, and RCW 4.84.185. The Ryken Living Trust requests attorney fees only under RCW 4.84.185, but joins in Avista's brief. Inland Light & Power requests attorney fees pursuant to RAP 18.9(a) and RCW 4.84.185, and also joins in the briefs of Avista and the Ryken Living Trust. The Moser parties do not specifically request attorney fees, but join in the Ryken Living Trust's brief. The Margitans do not request attorney fees and do not join in the portion of any other respondent's brief.

Here, the Hannas prevailed on issues relating to the trial court's award of attorney fees and costs pursuant to RCW 4.84.185 against the Margitans and Inland Power & Light. Because the Hannas' appeal was not totally devoid of merit, we deny Avista's and Inland Power & Light's requests for attorney fees under RAP 18.9(a).

Affirmed; reversed in part.

Lawrence-Berrey, J.

WE CONCUR:

Korsmo, J. _____ (result only)

Fearing, C.J.